| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------X<br>:<br>ASAD PERVAIZ SHEIKH, et al.,  :<br>                                Plaintiffs,  :<br>                                           :<br>       -against-  :<br>                                           :<br>ALIGN COMMUNICATIONS, INC.,  :<br>                                Defendant.  :<br>------------------------------------------------------------ X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED: 1/18/2017<br><br>15 Civ. 7549 (LGS)<br><br>**OPINION AND ORDER** |

LORNA G. SCHOFIELD, District Judge:

    Plaintiffs Asad Pervaiz Sheikh, Zena Dixon and Paul Huxtable, individually and on behalf of all others similarly situated, and Defendant Align Communications, Inc. jointly move for preliminary approval of a class settlement under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b). For the reasons discussed below, the motion is denied.

**I.   BACKGROUND**

    **A.   The Proposed Settlement**

    This case arises from Defendant's alleged failure to compensate adequately its IT engineers in its Managed Services Department (the "Employees") in violation of FLSA and either or both of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 et seq., and the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. § 34:11-56a et seq. On July 15, 2016, Plaintiffs filed an unopposed motion seeking preliminary approval of a class settlement that would resolve the case.

    Under the terms of their Stipulation of Settlement and Release (the "Agreement"), Defendant would pay up to $600,000, which the parties define as the Gross Settlement

Amount.[1]  Putative Class Members are 48 Employees who belong to (1) the NYLL Class, comprising Employees who worked in New York at any time during the six years preceding this lawsuit, (2) the NJWHL Class, comprising Employees who worked in New Jersey at any time during the two years preceding this lawsuit or (3) the FLSA Collective, comprising Employees who worked in New York or New Jersey at any time during the two years preceding this lawsuit.

Employees in the NYLL Class would automatically be part of the class unless they opt out, while employees in the NJWHL class would not be a part of the class unless they opt in. However, both the NYLL Class and the NJWHL Class purport to be Rule 23(b)(3) classes, which must be opt-out classes, unlike Rule 23(b)(1) and (b)(2) classes.  *See* Fed. R. Civ. P. 23(c)(2), (e); 7B Charles Alan Wright et al., *Federal Practice and Procedure* § 1807 (3d ed. 2016).  The FLSA Collective is opt-in, as contemplated by FLSA.  *See* 29 U.S.C. § 216(b).

As current or former employees, all possible Class Members are known, as is the amount that each Class Member would be owed if Defendant were found liable in the case. Nevertheless, members of the NJWHL Class and the FLSA Collective would be entitled to participate in the settlement only if they opt into the action and submit a claim form.  In other words, the settlement proceeds assigned to the NYLL Class will be paid in full, while the settlement proceeds assigned to the NJWHL Class and the FLSA Collective will be paid only to the extent that their class members take the steps to participate.  Plaintiffs estimate that 25% of opt-in class members will participate, and that 95% of opt-out class members will participate.

The amount payable to Class Members in settlement of their claims is the Net Settlement Fund, which is estimated to be $344,700.  That is the remainder of the $600,000 Gross Settlement Amount after deducting and paying $255,300 for attorneys' fees and costs for Class

---

[1] Capitalized terms that are not defined herein have the meanings provided in the Agreement.

Counsel, service awards to the Named Plaintiffs, fees to the proposed claims administrator and a reserve fund to cover errors and omissions.[2]  These deductions must be submitted to the Court for approval with the motion for final approval of the Agreement.  Any portion of the $600,000 in excess of $390,000 not disbursed would revert back to Defendant.  Plaintiffs estimate that approximately $182,000 to $271,000 of the $600,000 Gross Settlement Fund would be paid to Class Members, meaning that after disbursements for attorneys' fees and other costs above, the amount of the Gross Settlement Fund that would revert back to Defendant would be between $73,700 and $162,700.

The Agreement provides that Defendant must pay at least 65% (i.e., $390,000) of the $600,000 Gross Settlement Fund, but is unclear what would happen if less than 65% of the Gross Settlement Fund were claimed after payment of attorneys' fees and other expenses.  It states only that the amount necessary to reach 65% would be redistributed among Participating Class Members without providing a means of allocating the funds among them.[3]

### B. Relevant Procedural Background

On October 19, 2016, the Court held a hearing on Plaintiffs' unopposed motion for preliminary approval of the settlement.  The Court identified numerous concerns, including the reversionary nature of the Agreement, the creation of a reserve fund that would revert back to the Defendant, the disparate treatment of the New York and New Jersey classes and the lack of information about the fee structure used by the proposed claims administrator.

---

[2] Plaintiffs intend to seek attorneys' fees of $200,000, attorneys' expenses of $7,500, service awards of $20,000, and claims administrator fees of $7,800, for a total of $235,300.  With the $20,000 reserve fund, deductions from the Gross Settlement Fund before payment to Class Members would be $255,300.

[3] While it would be logical to allocate the money according to the pro rata shares that the parties have already calculated, they are directed to clarify their plan of allocation following any reversion in any revised motion that may be filed.

On October 21, 2016, the Court ordered the parties to submit additional information to better substantiate the fairness of the settlement, including (1) a breakdown of the projected net settlement amount and the recovery on the dollar for both the projected net settlement amount and the guaranteed $390,000 settlement amount, (2) a spreadsheet detailing the anticipated distribution of the gross settlement amount, (3) a breakdown of the number of individuals in each class, (4) a summary of the relevant state statutes that govern whether the settlement classes should be opt-in or opt-out, (5) the financial terms agreed to with the proposed claims administrator and (6) detailed information about the participation of the three named plaintiffs in the case.

On December 2, 2016, the parties submitted a letter providing most of the information requested by the October 21, 2016, Order. The parties did not address the financial terms agreed to with the proposed claims administrator, but did state that the proposed claims administrator had estimated a fee of $7,800.[4]

## II. DISCUSSION

A court may not grant preliminary approval of a class settlement unless the court is convinced that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "When a settlement is negotiated prior to class certification, as is the case here, it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). The proposed class settlement fails to meet the requirements for preliminary approval for four reasons.

---

[4] Should the parties renew their motion for settlement approval, they should provide the requested information regarding the fee arrangement with the proposed claims administrator, along with a representation from Plaintiffs' counsel on whether counsel has received, been promised or expects to receive anything of value from the chosen claims administrator for any reason other than the provision of class action services.

### A. Unfair and Improper Treatment of the NJWHL Class

The Agreement treats the putative NJWHL Class improperly and unfairly by requiring its class members to opt into the litigation in order to participate in the settlement.  (The NYLL Class in contrast is an opt-out class.)  First, the opt-in procedure is improper because the proposed class can be certified, if at all, only under Rule 23(b)(3), which pertains to actions in which common questions of law or fact predominate over individual questions.  The other alternatives are inapplicable: Rule 23(b)(1), which pertains to actions that create the risk of inconsistent adjudications, and Rule 23(b)(2), which applies to actions for injunctive or declarative relief.  A Rule 23(b)(3) action requires giving notice to all putative class members and giving them the opportunity to exclude themselves from the litigation.  *See* Fed. R. Civ. P. 23(c)(2)(B)(v), (e)(4).  An opt-in class, such as the one Plaintiffs propose, cannot be certified under Rule 23(b)(3).

Second, the opt-in procedure is unfair to putative NJWHL Class Members because it requires them to take the affirmative step of opting into the class in order to participate in the settlement.  "For several reasons, including fear of reprisal and an unwillingness to act, individuals typically do not respond to notices of collective action by taking affirmative steps to opt-in or opt-out of class action lawsuits."  Catherine K. Ruckelshaus, *Labor's Wage War*, 35 Fordham Urb. L. J. 373, 387 (2008).  Plaintiffs' counsel concedes as much with the assumption that 25% of opt-in class members will participate as compared with 95% of opt-out class members.  The opt-in requirement for NJWHL Class Members is particularly troubling here, where the parties know both the identity of all class members and the settlement amounts owed to them, and where Defendant has an incentive to keep participation rates low because up to 35% of the Gross Settlement Fund will revert to Defendant if it is unclaimed.

The parties attempt to justify this disparate treatment in their December 2 letter by claiming that New Jersey law requires that the NJWHL claims be managed on an opt-in basis.  The parties are incorrect.  While some New Jersey district courts previously had found that FLSA's opt-in requirement was incompatible with concurrent jurisdiction over a Rule 23(b)(3) opt-out NJWHL class, the Third Circuit subsequently held that concurrent jurisdiction is acceptable.[5]  *See Knepper v. Rite Aid Corp.*, 675 F.3d 249, 261–62 (3d Cir. 2012) (joining Second and other Circuits holding that a Rule 23(b)(3) opt-out class action based on state law claims that parallel FLSA claims is not inherently incompatible with FLSA), *overruling by implication, e.g.*, *Herring v. Hewitt Assocs., Inc.*, No. 06 Civ. 267, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006) (striking plaintiffs' state law Rule 23 class allegations as incompatible with FLSA).  Moreover, and more importantly, Second Circuit law is unequivocal that courts may have concurrent jurisdiction over opt-in FLSA claims and parallel Rule 23(b)(3) opt-out state claims.  *See, e.g.*, *Shahriar v. Smith & Wolensky Rest. Grp., Inc.*, 659 F.3d 234, 247-49 (2d Cir. 2011) (rejecting argument of "inherent conflict between opt-in collective actions under FLSA and opt-out class actions" under state law) (internal quotation marks omitted).

### B. Unnecessary Claims Procedure

Just as the Agreement is unfair in requiring NJWHL Class Members to "opt in" in order to participate in the settlement, the Agreement is similarly unfair in requiring all Class Members to submit a claim form in order to participate in the settlement.  The Agreement states, and the proposed Notice instructs, that a claim form must be submitted in order to receive payment on any claims under the FLSA and the NJWHL, but not the NYLL.  As noted above, a significant

---

[5] Even if the parties were correct, the result would not be to create an opt-in class but instead would be to strike the NJWHL class claims entirely, as the Court in *Herring* did.  *See* 2006 WL 2347875, at *2.

percentage of putative class members typically do not submit forms necessary to participate in a class action, and both the identity and settlement amounts due are already known without requiring class members to submit any forms.  The claims administrator could simply send checks to all NJWHL and NYLL Class Members in settlement of their state law claims, and send checks to all Opt-In FLSA Plaintiffs in settlement of their federal claims.  Although members of the FLSA Collective are statutorily required to opt-in in order to participate, there is no reason to require them to submit a claim form as well.  Neither is a claim form necessary in order to secure a release from Class Members (to the extent a release is even necessary given the Court ordered release that typically accompanies final settlement approval).  The parties can include release language either on the check or appended to the check if they desire.

### C.  Unnecessary Errors or Omissions Reserve Fund

The Agreement provides for a $20,000 deduction from the amount available to pay Class Members (i.e., the Net Settlement Fund) to "cover any correctable errors or omissions."  Any amount remaining from this fund will revert back to Defendant.  This reserve fund appears to be unnecessary as it is unclear why the settlement calculations would likely be erroneous; they are based on information known to the parties -- the number of weeks worked by each of the 48 Class Members and their hourly rate.  To the extent counsel wish to provide an optional claims procedure for a Class Member to establish a greater number of weeks worked or a higher hourly rate, the claims administrator could avoid errors by waiting until all of the claims information is submitted and verified to determine each Class Member's pro rata share.[6]

---

[6] It is unclear whether the parties intend to adhere to the Agreement's provisions relating to the $20,000 reserve fund, as the calculations submitted with the December 2, 2016, letter do not include that amount in calculating the Net Settlement Fund.

The parties are entitled to agree to whatever settlement amount they wish to propose to the Court.  However, the Court's evaluation of whether the amount is fair and adequate depends on the amount that is guaranteed to be paid and the amount that is likely to be paid, not some hypothetical amount that will never be paid.  In any class action notice, Class Members, who are invited to exclude themselves from, or object to the settlement, must be clearly apprised of the guaranteed amounts to be paid on claims, and not left with the impression that the hypothetical Gross Settlement Fund of $600,000, or even $600,000 net of expenses, represents the class recovery.  Plaintiff's counsel should also be aware that any fee award is likely to consider the minimum payment and/or actual payment to Participating Class Members, and counsel should not assume that they will be awarded a percentage of a gross settlement amount that is illusory due to a likely reversion -- whether of $20,000 from a reserve fund or $210,000 exceeding the 65% guaranteed payment.

### D.  No Support for Motion to Certify a FLSA Collective

The Agreement purports to resolve Plaintiffs' FLSA claims, but Plaintiffs have not justified their motion for certification of the FLSA Collective and instead have focused exclusively on the Rule 23 certification of the NYLL Class and the NJWHL Class.  Neither the memorandum of law in support of the motion for settlement approval nor the proposed order filed with the motion discuss why certification of a collective under FLSA is appropriate.

### III.  CONCLUSION

For the foregoing reasons, the joint motion for preliminary approval of class settlement is DENIED without prejudice to renewal, provided that the parties address the issues discussed above.

The parties shall file a joint letter by January 23, 2017 stating their intention to revise their

settlement and motion for its preliminary approval, or proceed with the litigation. They should include in either case a proposed schedule.

 The Clerk of Court is respectfully directed to close the motion at Docket No. 33.

Dated: January 18, 2017
  New York, New York

                 **LORNA G. SCHOFIELD**
                **UNITED STATES DISTRICT JUDGE**