**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ASAD PERVAIZ SHEIKH; ZENA DIXON; and PAUL HUXTABLE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> ALIGN COMMUNICATIONS, INC., <br><br><br> Defendant. | Civil Action No. 1:15-cv-07549-LGS <br><br> **REVISED JOINT STIPULATION OF SETTLEMENT AND RELEASE** |

This Revised Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between Asad Pervaiz Sheikh, Zena Dixon, and Paul Huxtable (collectively the "Named Plaintiffs"), individually and on behalf of the class of individuals that they seek to represent (hereinafter defined) (collectively with Named Plaintiffs the "Plaintiffs") and Align Communications, Inc. ("Align" or "Defendant") (together with Plaintiffs, the "Parties").

## RECITALS

WHEREAS, on September 24, 2015, Named Plaintiffs filed a class and collective action lawsuit in the United States District Court for the Southern District of New York, No. 15 Civ. 07549, captioned *Asad Pervaiz Sheikh, et al. v. Align Communications, Inc.*, on behalf of current and former IT Engineers, in which they asserted claims against Defendant under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), the New York Labor Law ("NYLL") and the New Jersey Wage and Hour Law ("NJWHL") for wage and hour violations;

WHEREAS, the purpose of this Agreement is to settle fully and finally all Released State Law Claims (as hereinafter defined) and Released FLSA Claims (as hereinafter defined) between Named Plaintiffs, Class Members and Defendant, including all claims asserted in the Litigation (as hereinafter defined);

WHEREAS, Defendant denies all of the allegations made by Named Plaintiffs in the Litigation and denies that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Litigation. Nonetheless, without admitting or conceding any liability or damages whatsoever, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation;

WHEREAS, on March 24, 2016, the Parties engaged in settlement discussions with the assistance of mediator Carol Wittenberg of JAMS. After multiple rounds of subsequent

1

negotiations, the Parties reached an accord resulting in an initial settlement agreement filed with the Court for preliminary approval on July 15, 2016;

WHEREAS, on January 18, 2017, the Court denied preliminary approval of the initial settlement agreement, without prejudice to renewal provided the parties addressed the issues set forth in the Court's Order and Opinion dated January 18, 2017;

WHEREAS, on April 12, 2017 the Parties participated in a settlement conference with Magistrate Judge Freeman to address concerns raised by the Court in its January 18, 2017 Opinion and Order, at which time the Parties reached an accord resulting in this Revised Settlement Agreement; and

WHEREAS, Plaintiffs' Counsel has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, conducted interviews with putative class and collective members, obtained and reviewed documents relating to Defendant's compensation policies, and analyzed payroll data and time records, and based upon their analysis and evaluation of a number of factors, and recognizing the substantial risks of litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable than this settlement, and that any recovery would not occur for several years, and that there is a risk that the class would not be certified, Plaintiffs' Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiffs and Class Members.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

## 1.   DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1   **Agreement**.  "Agreement" means this Revised Joint Stipulation of Settlement and Release.

1.2   **Acceptance Period**.  "Acceptance Period" means the 45 days that a Class Member has to cash a Settlement Check.

1.3   **Class Counsel**.  "Class Counsel" or "Plaintiffs' Counsel" means the Law Office of Christopher Q. Davis, PLLC.

1.4   **Class Members**.  "Class Members" include the Named Plaintiffs, FLSA Collective class members, NYLL Class members and NJWHL Class members.

1.5   **Court**.  "Court" means the United States District Court for the Southern District of New York, the Honorable Lorna G. Schofield presiding.

1.6   **Days**.  "Days," unless otherwise indicated, means business days if the specified number is less than 10, and calendar days if the specified number is 10 or greater.

**1.7**   **Defendant**.  "Defendant" means Align Communications, Inc.

**1.8**   **Defendant's Counsel**.  "Defendant's Counsel" means Proskauer Rose, LLP.  For purposes of providing any notices required under this Agreement, Defendant's Counsel shall refer to Kathleen M. McKeena.

**1.9**   **Effective Date**.  The "Effective Date" is the date on which this Agreement becomes effective, which shall mean the later of: (1) thirty (30) days following the Court's order granting final approval of the settlement if no appeal is taken of the Final Approval Order, or (2) the Court's entry of a final order and judgment after resolving any appeals.

**1.10**   **Employer Payroll Taxes**.  "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment compensation in this Litigation, including FICA, FUTA, and SUTA obligations.

**1.11**   **Fairness Hearing**.  "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

**1.12**   **Final Approval Order**.  "Final Approval Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, distribution of the Settlement Checks and Service Awards, and dismissal of the Litigation.

**1.13**   **FLSA Collective.**  "FLSA Collective" means all individuals who were employed by Defendant in New Jersey and/or New York as IT Engineers in the Managed Services Department at any point in time from September 24, 2013 through July 15, 2016 (hereinafter referred to as the "FLSA Collective Period").

**1.14**   **FLSA Collective Action Settlement**. "FLSA Collective Action Settlement" means the settlement of the FLSA collective action.

**1.15**   **FLSA Collective Period.**  "FLSA Collective Period" refers to the period of September 24, 2013 through July 15, 2016.

**1.16**   **Gross Settlement Amount**.  "Gross Settlement Amount" means $600,000.00, which Align Communications, Inc. has agreed to pay in full settlement of the Litigation, except as expressly set forth herein, as described more fully in this Agreement.

**1.17**   **Litigation**.  "Litigation," as set forth in the Introduction and hereunder, means the claims represented in the Complaint alleging violations of the FLSA and the wage and hours laws of New York and New Jersey, captioned *Asad Pervaiz Sheikh, et al. v. Align Communications, Inc.*, Case No. 15 Civ. 07549 (LGS).

**1.18**   **Named Plaintiffs**.  "Named Plaintiffs," as set forth in the Introduction, means Asad Pervaiz Sheikh, Zena Dixon and Paul Huxtable.

**1.19**   **Net Settlement Fund**.  "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) Court-approved attorneys' fees and costs for Class Counsel; (2) Court-approved Service Awards to Named Plaintiffs as specified

herein; and (3) fees paid to the Claims Administrator.  These deductions shall not exceed $202,500.00

1.20   **NJ Class Action Settlement**.  "NJ Class Action Settlement" means the settlement of the New Jersey Wage and Hour Law class action.

1.21   **NJWHL Class**.  "NJWHL Class" means all individuals who were employed by Defendant in New Jersey as IT Engineers in the Managed Services Department at any point in time from September 24, 2013 through July 15, 2016.

1.22   **NJWHL Class Period.**  "NJWHL Class Period" refers to the period of September 24, 2013 through July 15, 2016.

1.23   **Notice.**  "Notice" means the Court-approved Notice of Proposed Settlement of Class Action and Collective Action Lawsuit and Fairness Hearing that will be sent to all Class Members via First Class Mail and Email.  For members of the FLSA Collective, the Notice will include the Opt-in Form, defined in Section 1.29 below.  The proposed Notice is attached hereto as Exhibit B.

1.24   **NY Class Action Settlement**.  "NY Class Action Settlement" means the settlement of the New York Labor Law class action.

1.25   **NYLL Class**.  "NYLL Class" means all individuals who were employed by Defendant in New York as IT Engineers in the Managed Services Department at any point in time from September 24, 2009 through July 15, 2016.

1.26   **NYLL Class Period.**  "NYLL Class Period" refers to the period of September 24, 2009 through July 15, 2016.

1.27   **Objector**.  "Objector" means an individual who files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

1.28   **Opt-in FLSA Plaintiffs**.  "Opt-in FLSA Plaintiffs" means those FLSA Collective members who consent to join the FLSA Collective Action Settlement by filing an Opt-in Form.

1.29   **Opt-in Form. "**Opt-in Form" is a form that will be included with the Notices sent to the FLSA Collective members and will serve as a consent to join form for the FLSA collective action.  The Opt-in Form requires the FLSA Collective member to provide his/her name, signature, date of signing, and last four digits of his/her social security number.  The Opt-in Form will be included as an attachment to the Notice, which the FLSA Collective member can fill out and mail to the Settlement Claims Administrator.

1.30   **Opt-out Statement**.  "Opt-out Statement" is a written signed statement by a NYLL and/or NJWHL Class member who has decided to opt-out and not be included in this Agreement.

**1.31**   **Participating Class Members**.  "Participating Class Members" means (1) Named Plaintiffs; (2) Opt-in FLSA Plaintiffs; (3) NYLL Class members who do not file an Opt-out Statement; and (4) NJWHL Class members who do not file an Opt-out Statement.

**1.32**   **Parties**.  "Parties," as set forth in the Introduction, shall mean, collectively, Plaintiffs and Defendants.

**1.33**   **Plaintiffs**.  "Plaintiffs," as set forth in the Introduction, shall refer, collectively, to the Named Plaintiffs and the class of individuals they seek to represent.

**1.34**   **Preliminary Approval Order**.  "Preliminary Approval Order" means the Order entered by the Court preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notices to the Class Members.

**1.35**   **Qualified Settlement Fund or QSF**.  "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the settlement funds paid by Align Communications, Inc.  The QSF will be controlled by the Settlement Claims Administrator subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. The QSF will be funded by Defendant no later than twenty (20) days after the Final Approval Order.  Interest, if any, earned on the QSF will revert back to Defendant.

**1.36**   **Response Deadline.**  The "Response Deadline" is the date by which (i) a FLSA Collective Class member's Opt-in Form, (ii) a NYLL or NJWHL Class member's Opt-out Statement, and/or (iii) a NYLL or NJWHL Class member's Objection must be post-marked.  The Response Deadline shall be 110 days from the date of the initial mailing of the Notices.

**1.37**   **Settlement Claims Administrator**.  The "Settlement Claims Administrator" will be RG2 Claims Administration, LLC, which was selected by Class Counsel, and approved by Defendant's Counsel.  The Settlement Claims Administrator will be responsible for locating Class Members; mailing the Notices to Class Members; responding to Class Member inquiries; resolving disputes relating to Class Members' workweeks worked and settlement share amounts; calculating Class Members' settlement shares; making status reports on the state of the Settlement to the Parties; distributing Settlement Checks and withholding Class Members' share of taxes; remitting such withheld funds to the appropriate taxing authorities; coordinating collection and compilation of the Settlement Checks for filing with the Court; preparing a declaration regarding its due diligence in the claims administration process; and performing such other duties as the Parties may jointly direct or as are specified herein.  The Settlement Claims Administrator's fees shall come from the Gross Settlement Amount and shall not exceed seven thousand eight hundred dollars and zero cents ($7,800.00).

**1.38**   **Settlement Checks**.  "Settlement Checks" means the checks issued to Participating Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.  Settlement Checks will be mailed by the Settlement Claims Administrator five (5) business days after the Effective Date.

**1.39    Settlement Sum**.  "Settlement Sum" means the amount of the Net Settlement Fund, calculated in accordance with this Agreement, for each Class Member.

**2.        APPROVAL AND CLASS NOTICE**

**2.1    Binding Agreement**.  This Agreement is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Litigation.

**2.2    Responsibilities of the Settlement Claims Administrator**.  The Settlement Claims Administrator will be responsible for the mailing of Notices to Class Members in accordance with the Court's Preliminary Approval Order, distributing Service Awards, calculating the Settlement Sums in accordance with the Court's Final Approval Order, the claims administration process, distribution of the Settlement Checks to Participating Class Members, providing images of the original Settlement Checks signed by the Participating Class Members to counsel for the Parties, and for filing with the Court.

(A)     The Parties will have equal access to the Settlement Claims Administrator and all information related to the administration of the settlement.  The Settlement Claims Administrator will provide regular reports to counsel for the Parties regarding the status of the mailing of the Notices to Class Members, the claims administration process, and distribution of the Settlement Checks.

(B)     Defendant agrees to cooperate with the Settlement Claims Administrator, provide accurate information necessary to calculate the amounts of the Settlement Checks and provide other information related to the administration of the settlement.

**2.3    Preliminary Approval Motion.**

(A)     In accordance with Judge Schofield's June 5, 2017 Order, on or before June 16, 2017 Plaintiffs will file the Preliminary Approval Motion.  In connection with the Preliminary Approval Motion, and as referenced in Judge Schofield's June 5, 2017 Order, Plaintiffs will also submit to the Court on June 16, 2017 a proposed Notice of Settlement of Class and Collective Action Lawsuit and Fairness Hearing; a proposed distribution method for the Settlement Amount and calculation of the Settlement Checks; and a proposed Preliminary Approval Order.

(B)     The proposed Preliminary Approval Order will include the findings required by Federal Rules of Civil Procedure 23(a) and 23(b)(3).  The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out of this Agreement, or provide objections to this Agreement, which date will be sixty (60) days from the mailing of the Notice to the Class Member, whether received as the initial mailing or a subsequent mailing because the initial mailing was returned undeliverable, but no later than ninety (90) days from the initial mailing of the Notice, provisional approval of the FLSA collective class, and for a Fairness Hearing for Final Approval of the settlement before the Court at the earliest practicable date.

(C)     In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein; (3) dismiss the Litigation with prejudice; (4) award Class Counsel fees and costs; and (5) award Service Awards to Named Plaintiffs as more fully set forth herein.  Defendant will not oppose the Preliminary Approval Motion.

(D)     If the Court denies the Preliminary Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted.  Defendant retains the right to contest whether the Litigation should be maintained as a class action and to contest the merits of the claims being asserted in the Litigation.

(E)     The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Final Judgment and Dismissal.

## 2.4    Notice to Class Members

(A)     Within twenty (20) business days of the Court's issuance of a Preliminary Approval Order, Defendant will provide the Settlement Claims Administrator, in electronic form, the following information for all Class Members:  name, Social Security Number, last known address, last known email address, dates of employment, state(s) of employment, job title, and average salary amount within the applicable liability periods set forth in paragraphs 1.22, and 1.26 above as that information exists on file with Defendant ("Class List").

(B)     Within twenty (20) business days of receipt of the information set forth in 2.4(A) above, the Settlement Claims Administrator will e-mail and mail to all Class Members, via First Class United States Mail, postage prepaid, the Court-approved Notices.  The Notices shall inform each Class Member of (i) his/her approximate settlement allocation for participation in settlement of the Litigation; and (ii) his/her legal rights and options in the settlement, including the obligations and deadlines to exercise such rights.

(C)     For all FLSA Collective members, the Notices shall include an Opt-in Form.  In order to receive the portion of the settlement funds representing their FLSA claims, FLSA Collective members must return the Opt-in Form within the time limits prescribed in paragraph 1.36. The Settlement Claims Administrator will file all returned Opt-in Forms with the Court pursuant to Section 2.5(D). The last 4 digits of Social Security Numbers listed on Opt-in Forms will be redacted prior to filing with the Clerk of the Court.

(D)     NYLL Class members and NJWHL Class members do not need to file an Opt-in Form to receive the portion of the settlement funds representing their NYLL and/or

NJWHL claim(s); however, pursuant to Section 2.4(C) above, in order to receive the portion of their Settlement Sum representing settlement of their FLSA claims, if any, members of the NYLL Class and/or NJWHL Class must submit an Opt-in Form in accordance with Sections 1.36 and 2.4(C) and (E) of this Agreement.

(E)     The Opt-in Form requires all FLSA Collective members to provide their name, signature, date of signing, and last four digits of their social security number.  The Opt-in Form can be filed by returning such via U.S. Mail, postage pre-paid.  The Settlement Claims Administrator shall enclose a stamped return envelope with each mailed Notice.  FLSA Collective members must return their completed, signed Opt-in Form by the Response Deadline prescribed in paragraph 1.36.

(F)     The Settlement Claims Administrator will take reasonable steps to obtain the correct address of any Class Member for whom a Notice is returned by the post office as undeliverable and shall attempt re-mailings as described in this Agreement.  The Settlement Claims Administrator will notify Class Counsel and Defendant's Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

(G)     The Settlement Claims Administrator will also email the Notice to those Class Members whom Defendant has an email address for.  The Settlement Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice emailed to a Class Member that is returned as undeliverable.

**2.5    Class Member Opt-outs and FLSA Opt-in Forms.**

(A)     Class Members who choose to opt-out of the NYLL Class and/or NJWHL Class must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Settlement Claims Administrator that includes his or her name, address, and telephone number and states, in substance, "I opt out of the Align Communications, Inc. wage and hour settlement" ("Opt-out Statement").  To be effective, an Opt-out Statement must be postmarked by the Response Deadline as specified in paragraph 1.36.

(B)     The Settlement Claims Administrator will attempt a second mailing to any Class Members whose first mailing was returned as undeliverable.  The Settlement Claims Administrator shall not attempt more than two (2) mailings of the Notice to any Class Member, and all supplemental mailings shall occur within thirty (30) days or the first mailing to Class Members.  Regardless of when they receive the Notice, Class Members must submit an Opt-out Statement, object to the settlement pursuant to Section 2.6, and/or return their Opt-in Forms prior to the Response Deadline.

(C)     The Settlement Claims Administrator shall keep accurate records of the dates on which it mails and emails the Notices to Class Members.

(D)     The Settlement Claims Administrator will stamp the receipt date on the original of each Opt-out Statement and/or Opt-in Form that it receives and shall send copies to Class Counsel and Defendant's Counsel not later than five (5) business days after receipt thereof.  The Settlement Claims Administrator will file with the Clerk of Court stamped copies of any (i) Opt-out Statements; and (ii) FLSA Opt-in Forms within five (5) business days of the latest possible Response Deadline for any Class Member.  Within twenty-four (24) business hours of the end of latest possible Response Deadline for any Class Member, the Settlement Claims Administrator will send a final list of all Opt-out Statements and Opt-in Forms to Class Counsel and Defendant's Counsel by both email and overnight delivery.  The Settlement Claims Administrator will retain the stamped originals of all Opt-out Statements and/or Opt-in Forms and originals of all accompanying envelopes in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(E)     Any NYLL Class member and/or NJWHL Class member who does not properly submit an Opt-out Statement pursuant to this Agreement, will be deemed to have accepted the settlement and the terms of this Agreement and will be issued a Settlement Check, as set forth in this Agreement.

**2.6     Objections to Settlement.**

(A)     Class Members who wish to object to the proposed settlement must do so in writing.  To be considered, a written objection must be mailed to the Settlement Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Settlement Claims Administrator by the Response Deadline.  The written objection must state, in substance, "I object to the settlement in the Align Communications, Inc. wage and hour case" as well as all reasons for the objection.  The written objection must also include the name, job title, address, and telephone number for the Class Member making the objection.  A Class Member may not object to the settlement if he/she is not a Participating Class Member as defined in Section 1.31 above.  The Settlement Claims Administrator will stamp the date received on the original objection statement and envelope and send copies of each objection to Class Counsel and Defendant's Counsel by email and overnight delivery no later than three (3) business days after receipt thereof.  The Settlement Claims Administrator will also file the date-stamped originals of any and all objections with the Court within three (3) business days after the end of the latest possible Response Deadline for any Class Member.

(B)     A Class Member who files objections to the settlement ("Objector") also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his/her intention to do so in writing on his/her written objections they are submitted by stating, in substance, "I intend to appear at the Fairness Hearing."  An Objector may withdraw his or her objections at any time.  No Class Member may speak at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the previous section.  No Class Member

may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

(C)     The Parties may file with the Court written responses to any filed objections in Plaintiffs' Motion for Final Approval.

**2.7     Motion for Judgment and Final Approval**.  Not later than three weeks before the Fairness Hearing, Plaintiffs will submit a Motion for Judgment and Final Approval.

**2.8     Entry of Judgment**.  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) certify the FLSA Collective for purposes of settlement, (b) certify the NYLL Class for purposes of settlement, (c) certify the NJWHL Class for purposes of settlement, (d) enter Judgment in accordance with this Agreement, (e) approve the NJ Class Action Settlement and this Agreement as final, fair, reasonable, adequate, and binding on all NJWHL Class members who have not timely opted out pursuant to Section 2.5, (f) approve the NY Class Action Settlement and this Agreement as final, fair, reasonable, adequate, and binding on all NYLL Class members who have not timely opted out pursuant to Section 2.5, (g) approve the FLSA Collective Action Settlement and this Agreement as final, fair, reasonable, adequate and binding on all FLSA Collective members who timely submitted an FLSA Opt-in Form, and (h) dismiss the Litigation with prejudice.

**2.9     Effect of Failure to Grant Final Approval**.  In the event the Court fails to enter Judgment in accordance with this Agreement or such Judgment does not become Final as defined herein, the Parties shall resume the Litigation unless the Parties jointly agree to: (1) seek reconsideration of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.  In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved:

(A)     The Litigation will proceed as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified, and Defendant may contest whether this Litigation should be maintained as a class or collective action and contest the merits of the claims being asserted by Plaintiffs in this action.

(B)     The Court will provide notice to Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Settlement Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Settlement Claims Administrator in mailing the Notices.

**2.10    Settlement Checks.**

(A)     Each Participating Class Member, will be issued a Settlement Check by the Settlement Claims Administrator from the QSF in accordance with the Final Approval Order.

(B)     Five (5) business days after the Effective Date, the Settlement Claims
        Administrator will:

        (1)     mail settlement checks to Participating Class Members; and

        (2)     mail attorneys' fees and costs checks to Class Counsel.

(C)     All Settlement Checks issued to Participating Class Members shall contain on the
        back of the check, in at least seven (7) point font, the following language, in
        substance:

        **POSITIVE I.D. REQUIRED**

        I understand, acknowledge and agree that I am a class member participating in
        settlement of the claims alleged in *Sheikh, et al. v. Align Communications, Inc.,* No.
        1:15 Civ. 07549, and that by signing this check, I agree to release, settle and dismiss
        with prejudice, all claims against Align that I have or may have had in that
        litigation. I acknowledge that this payment is made in full accord and satisfaction of
        such claims; and I further acknowledge that I received and read the
        court-authorized notice explaining this Settlement and that I understand the terms
        of the Settlement, the reason I received this check, and that this check must be
        cashed in 45 days.

(D)     The Court will retain jurisdiction over the case following the entry of the Judgment
        for Dismissal until thirty (30) days after the end of the Acceptance Period.  The
        Settlement Claims Administrator will notify Class Counsel, who will in turn notify
        the Court, of the expiration of the Acceptance Period.

**3.     SETTLEMENT TERMS**

**3.1    Settlement Amount.**

(A)     Align Communications, Inc. agrees to pay a gross total settlement amount of up to
        six hundred thousand dollars ($600,000.00), which shall fully resolve and satisfy
        any claim for attorneys' fees and costs as described in Section 3.2(A) that are
        approved by the Court, all Settlement Claims Administrator fees as described in
        Section 1.37 and any and all amounts to be paid to Participating Class Members,
        and any Court-approved Service Awards to Named Plaintiffs as more fully set forth
        herein.  Other than the employer's share of the payroll taxes, Align
        Communications, Inc. will not be required to pay more than the gross total of six
        hundred thousand dollars ($600,000.00) under the terms of this Agreement.

(B)     By no later than twenty (20) days after the date of the Final Approval Order, Align
        Communications, Inc. shall deposit no less than four hundred sixty thousand eight
        hundred seventy-five dollars ($460,875) (representing 65% of the Net Settlement
        Fund plus attorney fees and costs as set forth in 3.2(A)) and no more than six
        hundred thousand dollars ($600,000.00) into the QSF.  The actual amount of the
        deposit will be determined by the Settlement Claims Administrator after taking into

11

account the Settlement Sum calculated for each Participating Class Member, as well as the Court-approved attorneys' fees and costs, all Settlement Claims Administrator fees and any Court-approved Service Awards to the Named Plaintiffs.  To the extent Align Communications, Inc. funds the QSF with less than six hundred thousand dollars ($600,000.00) and it is subsequently determined that additional funds are required to satisfy valid Settlement Sums, Align Communications, Inc. will add additional funds to the QSF, as necessary, but in no event will the total amount Align Communications, Inc. deposits into the QSF exceed six hundred thousand dollars ($600,000.00), excluding the employer's share of the payroll taxes.  Any interest accrued from the QSF shall revert back to Defendant.

(C)     Participating Class Members will have 45 days from the date of mailing to cash their Settlement Checks (as defined in Section 1.2 to be the "Acceptance Period"). Class Members will be informed of the Acceptance Period in the Notice and on the back of the Settlement Check.  The Settlement Claims Administrator shall notify the Parties in writing of the beginning of the Acceptance Period.

(D)     If the payments to the Named Plaintiffs and Participating Class Members as described in Sections 3.1, 3.3 and 3.4 are not cashed within 45 calendar days of the check date, the Claims Administrator will place a stop-pay order on those checks. All unclaimed funds, shall be re-deposited into the Claims Administrator's QSF and shall revert back to Align Communications, Inc.  In the event that less than 65% of the Net Settlement Amount has been paid-out to Participating Class Members, the difference between the actual percentage of the Net Settlement Amount that has been paid-out to Participating Class Members and 65% of the Net Settlement Amount will be redistributed amongst the Named Plaintiffs and Participating Class Members who have timely cashed their checks.  This section is a material provision of the Agreement.  If the Court does not approve reversion of the remaining portion of the Net Settlement Amount above 65%, Defendant shall have the right to re-negotiate the terms of the settlement or terminate the Agreement.

**3.2    Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)     At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of attorneys' fees of no more than one hundred sixty-seven thousand five hundred dollars ($167,500.00) plus costs Class Counsel has expended on behalf of the class, Service Awards (as set forth in Section 3.3) and fees for the Settlement Claims Administrator (as set forth in Section 1.37).  Class Counsel's costs, the Service Awards, and fees to the Settlement Claims Administrator will not exceed thirty-five thousand dollars ($35,000.00).  Defendant will not oppose this application.  After depositing the settlement funds into the QSF, Defendant shall not have any additional liability for Class Counsel's attorneys' fees and costs, nor fees for the Settlement Claims Administrator.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness,

reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.

**3.3    Service Awards to Named Plaintiffs.**

(A)    In return for services rendered to the Class Members, at the Fairness Hearing Named Plaintiffs Asad Pervaiz Sheikh, Zena Dixon, and Paul Huxtable will each apply to the Court to receive a Service Award from the QSF, payment of which will be contingent upon their signing of the General Release attached hereto as Exhibit A and referenced in paragraph 4.1(C).  The total amount of Service Awards shall not exceed Twenty Thousand dollars ($20,000.00).  The Service Awards are to be paid out as follows: Plaintiff Asad Pervaiz Sheikh shall receive Ten Thousand dollars ($10,000.00); Plaintiff Zena Dixon shall receive Five Thousand dollars ($5,000.00); and Plaintiff Paul Huxtable shall receive Five Thousand dollars ($5,000.00).  Defendant will not oppose such applications.

(B)    The application for Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of the Court's ruling on the application for Service Awards will not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal.

(C)    The Claims Administrator shall report taxes for Service Awards on IRS Form 1099.

**3.4    Net Settlement Fund and Allocation to Class Members.**

(A)    The allocation to Class Members for Settlement Checks will be made from the Net Settlement Fund.

(B)    A Class Member's proportionate share of the Net Settlement Fund will be determined by the Settlement Claims Administrator pursuant to the following formula, which is cumulative:

(C)    Each Participating Class Member is entitled to his or her Settlement Sum, which is based on the number of weeks worked and his/her average salary.

      i.    Total Settlement Sum per Class Member:

            a.    Compute the Settlement Sum for each class member by: (1) summing the individual class member's total weeks worked during the NJWHL Class Period and NYLL Class Period and multiplying such sum by the individual class member's average hourly rate of pay; (2) multiplying the total number of weeks worked by all Class Members by the average hourly rate of pay

for all Class Members; (3) dividing the sum of (1) by the sum in (2).

*(individual class member's weeks worked x individual class member's average hourly rate of pay) ÷ (total weeks worked by all Class Members x average hourly rate of pay for all Class Members)*

    b.  Multiply the fraction calculated in (a) above by the Net Settlement Fund.

ii.    Each class member's Total Settlement Sum shall be allocated amongst the claims for which such individual may be a Participating Class Member.

iii.    The Settlement Sum Allocation for NYLL Class:

    a.  Divide the individual class member's total weeks worked during the NYLL Class Period by his/her total weeks worked.

    b.  Multiply the fraction calculated in (a) above by the individual class member's Total Settlement Share determined in (C)(i) above.

iv.    Settlement Sum Allocation for NJWHL Class:

    a.  Divide the individual class member's total weeks worked during the NJWHL Class Period by his/her total weeks worked.

    b.  Multiply the fraction calculated in (a) above by the individual class member's Total Settlement Share determined in (C)(i) above.

v.    Settlement Sum Allocation for FLSA Collective:

    a.  For members of the NJWHL Class: 50% of his/her Settlement Sum shall be allocated towards settlement of his/her FLSA collective class claims.

    b.  For members of the NYLL Class:

        i.  If an individual NYLL class member has no weeks worked during the FLSA Collective Period, then no portion of their Settlement Sum shall be allocated towards settlement of FLSA collective class claims since their employment with Defendant is outside the FLSA limitations period.

ii. If an individual NYLL class member has weeks worked in NY during the FLSA Collective Period, then the portion of his/her Settlement Sum to be allocated towards settlement of the FLSA collective class claims shall be as follows:

    1. Divide the individual class member's total weeks worked during FLSA Collective Period by his/her total weeks worked during the NYLL Class Period.

    2. Divide the fraction in section (1) above, in half.

    3. Multiply the fraction calculated in (2) above by the individual's total Settlement Sum allocated for the NYLL Class (the "FLSA Allocation").

iii. The Settlement Sum for a NYLL class member who does not ultimately submit an Opt-in Form to become an Opt-in FLSA Plaintiff will be reduced by the amount in (ii)(3) above, which represents his/her settlement sum for participating in the FLSA Collective Action Settlement.

(D) All payments to Participating Class Members made pursuant to this Agreement shall be deemed to be paid to such Participating Class Members solely in the year in which such payments actually are received by the Participating Class Members. It is expressly understood and agreed that the receipt of such settlement payments will not entitle any Participating Class Member to additional compensation or benefits under any of Defendant's bonus or other compensation or benefit plans or agreements in place during the class periods, nor will it entitle any Participating Class Member to any increased retirement, 403b plan, 401K benefits or matching benefits or deferred compensation benefits. It is the intent of this settlement that the settlement payments provided for in this Agreement are the sole payments to be made by Defendant to the Participating Class Members, and that the Participating Class Members are not entitled to any new or additional compensation or benefits as a result of having received the settlement payments (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the class periods).

**3.5    Tax Characterization.**

(A) For tax purposes, 50% of payments to Participating Class Members pursuant to Section 3.4(C) shall be treated as back wages and 50% of such payments shall be treated as interest and/or liquidated damages.

(B) Payments treated as back wages pursuant to Section 3.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local

income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2. Payments treated as interest and/or liquidated damages pursuant to Section 3.5(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments made as Service Awards shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which each such payee shall provide for this purpose, on an IRS Form 1099.

(C)     Within 10 days after the Final Approval Order, the Settlement Claims Administrator shall inform the Parties of an estimate of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.5(A). Defendant shall pay this amount within 10 days from the date the Settlement Claims Administrator so informs the Parties. Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that each individual Class Member will be solely responsible for all taxes, interest and penalties due, if any, with respect to any payment received pursuant to this Agreement (other than income tax withholding and the employee share of the FICA tax as specified in Section 3.5(B)). Plaintiffs, on behalf of the Class and each individual member of the Class, acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

## 4.    RELEASE

### 4.1    Release of Claims.

(A)     By operation of the entry of a Judgment and the Final Approval Order, and except as to such rights or claims as may be created by this Agreement or as otherwise provided below, all NYLL Class Members and NJWHL Class Members who have not submitted a valid Opt-out Statement, each on his or her own behalf, and on behalf of their respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys fully release and discharge Align Communications, Inc. and all of its parents, subsidiaries, related companies and affiliated entities and all of its officers, directors, shareholders, employees, members, managers, joint venture partners, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, individually and jointly, from any and all individual or class and collective action wage and hour claims, debts, liabilities, demands, obligations, guarantees, costs, expenses, attorneys' fees, damages, liquidated damages, punitive damages,

interest, penalties, actions, or causes of action arising under the New York Labor Law and the New Jersey Wage and Hour Law, whether known or unknown, contingent or non-contingent, from the beginning of time through the date of the Preliminary Approval Order, including all New York State wage and hour claims that were alleged or could have been alleged in the Litigation, all New Jersey State wage and hour claims that were alleged or could have been alleged in the Litigation, all claims related to minimum wage violations, failure to provide wage and/or tip credit notification, tip misappropriation, unpaid wages, unpaid overtime, missed meal and rest periods, unpaid travel time, unpaid reimbursements, maintenance allowances, unpaid waiting time and unrecorded time, nonpayment or inaccurate payment of tips, gratuities and wages under any state or local law, nonpayment or inaccurate payment of service charges under any state or local law, failure to pay the spread of hours premium, record keeping violations, waiting time penalties, retaliation, claims for back or front pay, interest and other civil penalties, and any other claims under the New York Labor Law, any other New York wage and hour law, regulation, order or opinion letter, the New Jersey Wage and Hour Law, any other New Jersey wage and hour law, regulation, order or opinion letter, and the common law (the "Released State Law Claims"). It is agreed between the Parties that this release will have res judicata, collateral estoppel, claim preclusive, and/or issue preclusive effect as to all released claims made by or on behalf of any Class Member who has not submitted a valid Opt-Out Statement, regardless of whether or not they are a Participating Class Member. In order for Align Communications, Inc. to achieve a full and complete release of all New York Labor Law and New Jersey Wage and Hour Law claims arising from or related to this Litigation, Plaintiffs and Class Members acknowledge that this Agreement is meant to include in its effect all wage and hour claims that were or could have been asserted in the Litigation on or before the Effective Date of this Agreement, including claims that Plaintiffs and Class Members do not know or suspect to exist against Defendant.

(B)     In addition to claims released in paragraph 4.1(A), each Participating Class Member and Named Plaintiff who receives a Settlement Check inclusive of the FLSA portion of their Settlement Sum because they submitted a timely FLSA Opt-in Form will forever and fully release Defendant from Released FLSA Claims. "Released FLSA Claims" means all wage and hour claims that were or could have been asserted under the Fair Labor Standards Act, as amended, by or on behalf of Class Members from the beginning of time through the date of the Preliminary Approval Order.  The Released FLSA Claims include all wage and hour claims that were or could be asserted in this Litigation, and any wage and hour claim under the FLSA that could be asserted against Defendant under federal law relating to retaliation, the failure to pay wages, back wages, overtime, minimum wages, all "derivative benefit claims" (i.e., claims for benefits resulting from alleged failure to pay overtime or wages, both ERISA and non-ERISA benefits), interest, liquidated damages, penalties, attorneys' fees, and any other form of compensation or relief permitted under any federal law.

(C)   In addition to claims released in paragraphs 4.1(A) and (B), Named Plaintiffs Asad Pervaiz Sheikh, Zena Dixon and Paul Huxtable shall execute the General Release attached hereto as Exhibit A.  In the event the Court fails to approve the Service Awards described in Paragraph 3.3, the General Release shall be null and void.

**4.2     Release of Fees and Costs for Settled Matters.**

Class Counsel and Plaintiffs, on behalf of the Class Members, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Align Communications, Inc. for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs and the Class Members.  Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation of these individuals in the Litigation.  This provision becomes null and void in the event the Court fails to issue a Final Approval Order.

**5.0     NON-ADMISSION OF LIABILITY.**

By entering into this Agreement, Align Communications, Inc. does not in any way admit any violation of law or any liability whatsoever to Plaintiffs and/or the Class Members, individually or collectively, all such liability being expressly denied.  Likewise, by entering into this Agreement, Defendant does not, in any way, admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendant enters into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and the Class Members.  Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (a) are not, shall not be deemed to be, and may not be used as, an admission or evidence of any wrongdoing or liability on the part of Align Communications, Inc. or of the truth of any of the factual allegations in any and all Complaints filed in the Litigation; and (b) are not, shall not be deemed to be, and may not be used as, an admission or evidence of fault or omission on the part of Align Communications, Inc. in any civil, criminal, administrative or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement; and (c) are not, shall not be deemed to be, and may not be used as, an admission or evidence the appropriateness of these or similar claims for class certification or administration collective action treatment other than for purposes of administering this Agreement.

**6.0     NON-DISCLOSURE AND COMMUNICATIONS**

**6.1     Non-Disclosure of Settlement Terms**

(a)     Neither the Named Plaintiffs nor Class Counsel nor anyone acting at their direction,

on their behalf, or in concert with them ("Restricted Parties") will make any public statements relating to the Settlement, or the Litigation, including but not limited to by use of social media, blogs, advertising, and/or to members of the media or private organizations, unless expressly permitted below.  If contacted regarding this Settlement, the Restricted Parties' response shall only be to respond in accordance with the terms and information publicly available, including that contained in this Settlement Stipulation.  Class Counsel agrees that it, and anyone acting at its direction or on its behalf, will not discuss this Settlement Stipulation or its terms with any individual whom they reasonably know to be current or former personnel at Align Communications, Inc., other than the Class Members in this Litigation.

(b)     Nothing in this Agreement shall prevent the Parties from filing any required regulatory disclosures regarding the Litigation or their counsel from complying with their obligations under the law.

(c)     Named Plaintiffs and Class Counsel will promptly notify Defendant's Counsel, via email, of any third-party demand or requirement by any law, rule or regulation, or by subpoena, or by any other administrative or legal process to disclose information pertinent to this Settlement and shall not make any disclosure until at least five (5) business days after the notice is provided, except if an earlier production is court-ordered so that Defendant's Counsel may seek a protective order or other appropriate remedy prior to such disclosure.  Should disclosure be required hereunder, Named Plaintiffs and Class Counsel shall furnish only that portion of the information pertinent to this Settlement legally required to be disclosed and shall use reasonable efforts to get confidential treatment thereof by the recipient.

## 7.0     NO FUTURE EMPLOYMENT

Named Plaintiffs shall not apply for employment with Defendant or seek retention as an independent contractor or consultant, and Defendant shall not be liable for denying or refusing to hire or otherwise engage a Named Plaintiff who applies for employment or retention as an independent contractor or consultant notwithstanding this covenant.  Accordingly, the Named Plaintiffs hereby expressly waive and release any and all rights and any and all claims that he or she may have to challenge such a denial of employment or retention as an independent contractor or consultant as constituting unlawful retaliation or a violation of a law.

## 8.0     INTERPRETATION AND ENFORCEMENT

### 8.1     Cooperation Between the Parties; Further Acts.

The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

### 8.2     No Assignment.

Class Counsel and Named Plaintiffs, on behalf of the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

**8.3     Entire Agreement.**

This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into and superseded by this Agreement.

**8.4     Binding Effect.**

This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs and all Participating Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

**8.5     Arm's Length Transaction; Materiality of Terms.**

The Parties have negotiated all the terms and conditions of this Agreement at arm's length.  All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**8.6     Captions.**

The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**8.7     Construction.**

The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**8.8     Blue Penciling.**

If any provision of this Agreement, other than Section 4 entitled "RELEASE," is held by a court of competent jurisdiction to be void, voidable, unlawful or unenforceable, the remaining portions of this Agreement will remain in full force and effect.

**8.9    Governing Law.**

This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**8.10   Continuing Jurisdiction.**

The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**8.11   Waivers, etc. to be in Writing.**

No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**8.12   CAFA Notice.**

Defendant shall timely provide notice as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel.

**8.13   When Agreement Becomes Effective; Counterparts.**

This Agreement shall become effective upon its execution.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**8.14   Signatures of Named Plaintiffs.**

This Agreement is valid and binding if signed by Defendant's authorized representative and at least one Named Plaintiff and any Named Plaintiff's failure to sign the Agreement does not nullify the Agreement.

**8.15   Facsimile and Email Signatures.**

Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile

or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: ⁊/20 , 2017          ALIGN COMMUNICATIONS, INC.:

By: _____

Its: ___CFO_____

DATED: _____, 2017          ASAD PERVAIZ SHEIKH

_____

DATED: _____, 2017          ZENA DIXON

_____

DATED: _____, 2017          PAUL HUXTABLE

_____

or email to counsel for the other party.  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: _____, 2017          ALIGN COMMUNICATIONS, INC.:

By: _____

Its: _____

DATED: 07/20, 2017          ASAD PERVAIZ SHEIKH

_____

DATED: _____, 2017          ZENA DIXON

_____

DATED: _____, 2017          PAUL HUXTABLE

_____

22

## EXHIBIT A

## GENERAL RELEASE

In consideration of the Court-Approved Service Award of Ten Thousand Dollars and Zero Cents ($10,000.00), I, Asad Pervaiz Sheikh,  on my own behalf, and on behalf of my current, former and future heirs, spouses, executors, administrators, agents, and attorneys fully release and discharge Defendant, Align Communications, Inc. and all of its parents, subsidiaries, related companies and affiliated entities and all of their respective officers, directors, shareholders, employees, members, managers, co-joint venture, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, successors and assigns, and all persons or entities acting by, through, under or in concert with any of them, individually and jointly from any and all complaints, claims, damages, charges, demands, suits or actions, whether known or unknown, in law or in equity, I ever had, now have or hereafter can, shall, or may have against Align Communications, Inc., that are based on acts or omissions from the beginning of time through the date this General Release is executed, including but not limited to claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866, the Civil Rights Act of 1991, the Americans with Disabilities Act, the Equal Pay Act, the Fair Labor Standards Act, the Family and Medical Leave Act of 1993, the Employee  the National Labor Relations Act, the Employee Retirement Income and Security Act, the worker Adjustment and Retraining Notification Act, the Rehabilitation Act, the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law, the New York City Human Rights Law, the New York Labor Law, the New York State Wage Theft Prevention Act, the New Jersey Wage and Hour Law, the New Jersey Law Against Discrimination, the Conscientious Employee Protection Act, and any other federal, state or local civil rights, retaliation, discrimination or labor laws, and/or contract or tort laws, with respect to any event, matter, claim, damage or injury arising out of or in any way connected with my employment or the termination of that employment from Align Communications, Inc.  I acknowledge that I am executing this General Release after having had a reasonable time to read it, consider it and consult with legal counsel.  I further acknowledge that I have not relied on any representations or statements not set forth in this General Release and/or the Joint Stipulation of Settlement and Release to which it is an Exhibit.  My execution of this General Release is voluntary and of my own free will.

07/20/2017
_____
Date

_____
Signature

ASAD PERVAIZ SHEIKH
_____
Printed Name

**Exhibit B**

## NOTICE OF PROPOSED CLASS ACTION LAWSUIT SETTLEMENT
## AND FINAL FAIRNESS HEARING

**TO: ALL PERSONS EMPLOYED BY ALIGN COMMUNICATIONS, INC. AS IT ENGINEERS IN THE MANAGED SERVICES DEPARTMENT AT ANY TIME BETWEEN SEPTEMBER 24, 2009 and JULY 15, 2016.**

*A federal court authorized this notice.  This is not a solicitation from a lawyer.*

Based on information in the records of Align Communications, Inc., ("Align"), you were employed as an IT Engineer in the Managed Services Department at some point in time between September 24, 2009 and July 15, 2016 (the "Covered Period") and are eligible to participate in the proposed settlement of the case captioned *Asad Pervaiz Sheikh, et al. v. Align Communications, Inc.*, Index No. 15 Civ. 07549 (U.S. District Court for the Southern District of New York) (the "Litigation" or the "Lawsuit").

**PLEASE READ THIS NOTICE CAREFULLY.**  It contains important information about your rights and options concerning the settlement of the Lawsuit.

- This settlement resolves a lawsuit in the Southern District of New York over whether Align failed to pay certain employees who worked in New York State and/or the State of New Jersey for all hours worked and/or overtime compensation and/or unlawful wage deductions; it avoids the costs and risks that are associated with continuing the lawsuit; it pays money to current and/or former Align IT Engineers like you; and it releases Align from liability.

- The settlement will create a fund to pay certain current and former IT Engineers who worked at Align in New York or New Jersey at some point in time between September 24, 2009 and July 15, 2016 (if you worked in New York), or between September 24, 2013 and July 15, 2016 (if you worked in New Jersey) for allegations concerning unpaid overtime, unpaid hours and/or unlawful wage deductions.  Before any payments are made to the individuals who decide to participate in this proposed class action settlement, fees for court-appointed lawyers will come out of the fund, as will payments to the individuals who brought and participated in this lawsuit and the claims administrator who administers the settlement.

- The two parties to this lawsuit disagree as to which party would have won if the case proceeded to trial.

- Your legal rights are affected by whether or not you chose to act per the terms of this Notice.

- According to Align's records you worked at Align from:  **[DATES OF EMPLOYMENT].**  Please read this notice carefully to understand **all** your rights and options, depending on when you were employed. If you decide to participate in the settlement, it is estimated you're your share of the settlement fund will be: $_____.

- **If you worked for Align anytime on or after September 24, 2013, you have BOTH federal FLSA claims and state law claims.**  If you have both federal and state law claims, you must review Part A and Part B below.  If you only have state law claims you only need to review Part B below.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **PART A** | |
| **IF YOU HAVE FEDERAL FLSA CLAIMS:** | |
| **SUBMIT A OPT-IN FORM** | Submitting an Opt-in Form is the <u>only</u> way to receive a payment for your proportionate share of the settlement fund attributable to your federal law claims (see below). |
| **OBJECT** | If you object to the settlement terms, you must write to the Court about why you don't like the settlement (see below). |
| **GO TO A HEARING** | If you would like to voice your concerns about the fairness of the settlement, you may ask to speak in Court at the Fairness Hearing (see below). |
| **PART B** | |
| **FOR YOUR STATE LAW CLAIMS:** | |
| **OBJECT** | If you object to the settlement terms, you must write to the Court about why you don't like the settlement (see below). |
| **EXCLUDE YOURSELF** | If you exclude yourself from the settlement you will <u>not</u> receive a payment for the proportionate share of the settlement fund attributable to your state law claims (see below).  You will retain your right to bring or join any other lawsuit against Align concerning legal claims related to overtime wages, unpaid wages, and deductions from wages for the period September 24, 2009 to July 15, 2016 (if you worked in New York) or September 24, 2013 to July 15, 2016 (if you worked in New Jersey). |
| **GO TO A HEARING** | If you would like to voice your concerns about the fairness of the settlement, you may ask to speak in Court at the Fairness Hearing (see below). |
| **DO NOTHING** | You remain part of the NY and/or NJ classes and receive your proportionate share of the settlement fund attributable to your NYLL and/or NJWHL claims. |

## CRITICAL DATES

**[DATE]:**     The last date to mail the Opt-in Form if you have federal claims.

**[DATE]:**     The last date to mail a request for exclusion letter, set forth in Section 14 below.

**[DATE]:**     The last date to mail any written objections to the Settlement.

**[DATE]:**     The date of the Court hearing to determine whether the proposed settlement is fair, reasonable and adequate and should be approved by the Court.

| WHAT THIS NOTICE CONTAINS | |
|---|---|

| | |
|---|---|
| **BASIC INFORMATION** ................................................................ | **PAGE 4** |
| 1.  Why did I get this notice? <br> 2.  What is this case about? <br> 3.  Why is this a class action? <br> 4.  Why is there a settlement? <br> 5.  How do I know if I am part of the settlement? | |
| **THE SETTLEMENT BENEFITS—WHAT YOU GET** .......................................... | **PAGE 5** |
| 6.  What does the settlement provide? <br> 7.  How much will my payment be? <br> 8.  Tax treatment of settlement | |
| **HOW TO GET A PAYMENT** ............................................................ | **PAGE 7** |
| 9.  How can I get a payment? <br> 10. When would I get my payment? <br> 11. What am I giving up by staying in the class and getting a payment? | |
| **THE LAWYERS REPRESENTING YOU** ................................................... | **PAGE 8** |
| 12. Do I have a lawyer in this case? <br> 13. How will the lawyers be paid? | |
| **EXCLUDING YOURSELF FROM THE SETTLEMENT** ...................................... | **PAGE 9** |
| 14. How do I get out of the settlement? <br> 15. If I don't exclude myself, can I sue Align later? <br> 16. If I exclude myself, can I get money from this settlement? | |
| **OBJECTING TO THE SETTLEMENT** ................................................... | **PAGE 10** |
| 17. How do I tell the Court that I don't like the settlement? <br> 18. What's the difference between objecting and excluding? | |
| **THE COURT'S FAIRNESS HEARING** .................................................. | **PAGE 11** |
| 19. When and where will the Court decide whether to approve the settlement? <br> 20. Do I have to come to the hearing? <br> 21. May I speak at the hearing? | |
| **IF YOU DO NOTHING** ............................................................... | **PAGE 11** |
| 22. What happens if I do nothing at all? | |
| **HOW CAN I GET MORE INFORMATION?** ............................................... | **PAGE 12** |

| BASIC INFORMATION |
|---|

## 1.   Why did I get this notice?

Align's records show that you worked for Align as an IT Engineer in New York State and/or the State of New Jersey at some point between September 24, 2009 and July 15, 2016 (if you worked in NY) or September 24, 2013 and July 15, 2016 (if you worked in NJ), and that you may not have received the appropriate overtime wages or compensation for all hours worked, as is required by law, and/or may have been subject to unlawful wage deductions.

You are receiving this notice because you have the right to know about a proposed settlement of a class action lawsuit, and about all your options, before the Court decides whether to approve the settlement.  You can participate in the settlement, or you may decline to do so.

This notice explains the process required for informing the attorneys and the Court of your decision.  The notice also explains the process the Court has put in place for deciding whether to approve the settlement, and for administering the settlement if it is approved.

The Court in charge of this case is the United States District Court for the Southern District of New York, and the case is known as *Asad Pervaiz Sheikh, et al. v. Align Communications, Inc.*, Case No. 15 Civ. 07549 (LGS).  The people who initiated the suit are called Plaintiffs, and the company they sued, Align, is called the Defendant.

## 2.   What is this case about?

Former Align employees filed a lawsuit claiming that Align (a) misclassified the IT Engineers who worked in its Managed Services Department as exempt employees and therefore failed to pay them premium overtime wages in violation of the Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL") and the New Jersey Wage and Hour Law ("NJWHL"); (b) failed to record and pay IT Engineers for time spent working off-the-clock after Align re-classified its IT Engineers as "nonexempt"; and (c) made unlawful wage deductions in violation of section 193 of the NYLL and the New Jersey Wage Payment Act ("NJWPA").  Align denies these allegations.

Nevertheless, Align does not discourage your participation in the settlement, and the law strictly prohibits Align from retaliating against you for participating in the settlement.

## 3.   Why is this a class action?

In a class action, one or more people called Class Representatives (in this case, Asad Pervaiz Sheikh, Zena Dixon, and Paul Huxtable) sued on behalf of people who have similar claims.  All these people are a Class or Collective Class Members.  One court resolves the issues for all Class Members, except for those who choose to exclude themselves from the Class.

| 4.   Why is there a settlement? |
| --- |

The Court did not decide in favor of the Plaintiffs or the Defendant.  Instead, both sides agreed to a settlement before trial.  That way, both sides avoid the cost of a trial, and the people affected will get compensation. The Class Representatives and the attorneys think the settlement is the best outcome for all Class Members.  Both sides agreed to the settlement to resolve the case, and avoid further disputes, inconvenience, and expense.  By agreeing to settle the case, Align does not admit any liability, culpability, negligence, or wrongdoing.

| 5.   How do I know if I am part of the settlement? |
| --- |

The Court decided that every individual who fits into at least one of the following categories is a Class Member:

- Individuals who were employed by Align in New Jersey as an IT Engineer in the Managed Services Department at any point in time from September 24, 2013 through July 15, 2016;

- Individuals who were employed by Align in New York as an IT Engineer in the Managed Services Department at any point in time from September 24, 2009 through July 15, 2016.

| THE SETTLEMENT BENEFITS—WHAT YOU GET |
| --- |

| 6.   What does the settlement provide? |
| --- |

Align has agreed to pay no less than four hundred sixty thousand eight hundred seventy-five dollars ($460,875.00) and no more than six hundred thousand dollars ($600,000.00) to Class Members who choose to participate in the settlement ("Participating Class Members").  Before the Class Members are paid, however, the following amounts will be removed from the settlement fund:

- <u>Attorneys' Fees and Costs</u>:  The attorneys for the Class Members will ask the Court to grant them $167,500.00 from the settlement fund to pay for their fees in this action.  The attorneys for the Class Members with also ask the Court to grant them the actual amount of any costs expended on behalf of the class, up to $7,200.00

- <u>Class Representative Payments</u>:  The Class Representatives will seek special payments for their service in bringing this lawsuit on behalf of the Class Members. The total amount in service payments they seek is $20,000.00, to be distributed among the Class Representatives as follows: $10,000.00 to Asad Pervaiz Sheikh; $5,000.00 to Zena Dixon; and $5,000.00 to Paul Huxtable.

- <u>Claims Administrator Fees</u>: A Claims Administrator was appointed to send out this notice, collect responses from the Class Members, and send Class Members who choose

to participate their share of the settlement, if the Court approves it.  The Parties have asked that the fees for this work, which they estimate to be around $7,800.00, be paid from the settlement fund.

If the Court approves all of these fees and costs, $397,500.00 would remain in the settlement fund to pay Class Members (the "Net Settlement Fund").  Defendant has agreed to pay-out at least 65% of the Net Settlement Fund to Class Members, or $258,375.00, whichever is greater.  Any settlement funds over 65% of the Net Settlement Fund, which Class Members do not claim and which have not been paid out as Attorneys' Fees and Costs, Class Representative Payments and Claims Administrator Fees (as described above), will be returned to Align.

| 7.   How much will my payment be? |
|---|

If you decide to participate in the settlement, it is estimated that your share of the settlement fund will be: $_____.  This represents your total share of the settlement fund, which includes a share for claims under the FLSA, if any, as well as your claims under the NYLL and/or the NJWHL.  **If you only participate in some claims and not others (for example, by not submitting an Opt-in Form for your federal FLSA claims), this estimate will change accordingly**.

- To participate in settlement of your NYLL and/or NJWHL claims you do not need to do anything.  However, if you do nothing you will not receive your share of the settlement fund representing your federal law FLSA claims, if you have any.

- To participate in your federal law FLSA claims you must return the Opt-in Form included in this package by **[DATE]**.  **If an Opt-in Form was not included in this Notice, that means you do not have any FLSA claims because your employment with Align concluded prior to September 24, 2013.  If you believe this is in error you must contact the Claims Administrator at the number provided below.**

Your share of the settlement fund was calculated based on your average hourly rate of pay and the number of weeks you worked for Align in New York State between September 24, 2009 and July 15, 2016 and/or in the State of New Jersey between September 24, 2013 and July 15, 2016.  Your share of the settlement fund also includes an apportionment for any weeks worked during the FLSA Collective Class Period – between September 24, 2013 and July 15, 2016.

The calculation of the number of weeks you worked is based on Align's human resource and payroll records.  In calculating your share of the settlement fund, any partial weeks that you worked were treated as full weeks of work.  A week was only included in the calculation if you received pay for actual work you performed during that week.  This means that any weeks for which you did not perform work, but were paid due to vacation or sick pay, or other similar reasons, would not be included in calculating your portion of the settlement fund.

If you would like to dispute the number of weeks that you worked, your average hourly rate of pay (based on your annual pay), or the amount of your settlement payment, or if you wish

to find out or challenge any of these amounts, you should contact the Claims Administrator at
\_\_\_-\_\_\_-\_\_\_\_. If there is a dispute as to how many weeks you worked or your average rate of
pay, Align's records will be presumed to be correct, but the Parties will evaluate any information
and evidence you submit to the Claims Administrator and then reach a final decision.

| 8. | Tax treatment of settlement |
|---|---|

If you choose to participate in the settlement, 50% of the payment made to you will be (a)
deemed taxable, wage income paid under an IRS Form W-2, and (b) subject to ordinary payroll
withholdings; and 50% of the payments made to you from the Settlement Fund shall be treated as
non-wage income and reported on an IRS Form 1099.

## HOW TO GET A PAYMENT

| 9. | How can I get a payment? |
|---|---|

To qualify for payment of your share of the settlement fund, you must complete the
following steps:

- To qualify for payment of your NYLL and/or NJWHL claims, you do not need to do
  anything.  You will receive a check in the mail after the court approves the
  settlement.

- To qualify for **additional** payment of your federal FLSA Claims, if any, you must
  submit the Opt-in Form, included herein.  If a Opt-in Form has not been included in
  your notice, that means you worked for Align prior to September 24, 2013 and
  therefore do not have any federal claims.  Alternatively, the Opt-in Form may be
  obtained electronically by clicking here: [**EMBEDDED LINK**].  Please read the
  instructions carefully, fill out the form, sign, date, and mail it no later than [**DATE**]
  to:

ALIGN COMMUNICATIONS SETTLEMENT
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102- 9940
\_\_\_-\_\_\_-\_\_\_\_

If you lose, misplace, or need another Opt-in Form, you should contact the Claims
Administrator or Class Counsel.  Opt-in Forms postmarked after [**DATE**] will not be accepted.

| 10. | When would I get my payment? |
|---|---|

The Court will hold a hearing on December 13th, 2017 to decide whether to approve the
settlement.  If the Court approves the settlement after that hearing, there may still be appeals.  It
is always uncertain whether these appeals can be resolved, and resolving them can take time,

perhaps more than a year.  Everyone who participates in the settlement will be informed of the progress of the settlement.  Please be patient.

| 11. | What am I giving up to get payment or stay in the Class? |
|---|---|

If you worked for Align as an IT Engineer in New York State and/or the State of New Jersey, and you do not exclude yourself from this settlement by submitting an exclusion letter pursuant to Section 14 below, and the Court grants final approval of the settlement, you will release Align from liability for all state law claims asserted in the lawsuit, including any claims under New York law or New Jersey law for unpaid wages, overtime and/or wage deductions, between September 24, 2009 and July 15, 2016 (for New York law claims) and between September 24, 2013 and July 15, 2016 (for New Jersey law claims) .

If you complete and return an Opt-in Form, you will release all claims under the federal Fair Labor Standards Act ("FLSA") between September 24, 2013 and July 15, 2016 that you may have for unpaid wages, overtime and/or wage deductions based on your employment with Align, and any claims under federal law that arise from or are related to the facts alleged in the lawsuit and/or your employment with Align.  You will not release any FLSA claims if you do not return an Opt-in Form.

## THE LAWYERS REPRESENTING YOU

| 12. | Do I have a lawyer in this case? |
|---|---|

If you choose to stay in the class, the Court has decided that the Law Office of Christopher Q. Davis is qualified to represent you and all other Class Members. These attorneys are called "Class Counsel."  You do not need to hire your own attorney because Class Counsel is working on your behalf.  You will not be charged for these lawyers.  However, if you want to be represented by your own lawyer, you may hire one at your own expense.

If you have questions or desire additional details, you may call, email or correspond with Class Counsel.  Class Counsel's contact information is:

> The Law Office of Christopher Q. Davis, PLLC
> 225 Broadway, Suite 1803
> New York, NY 10007
> 646-430-7930
> clerk@workingsolutionsnyc.com

| 13. | How will the lawyers be paid? |
|---|---|

Class Counsel will ask the Court to approve payment of up to $167,500, plus the actual costs expended in litigating this matter, not to exceed $7,200, to them from the settlement fund for attorneys' fees and expenses.  The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.  Align has agreed not to oppose Class Counsel's request for these fees, but the Court may award less than this amount.

| **EXCLUDING YOURSELF FROM THE SETTLEMENT** |
| --- |

If you don't want a payment from this settlement, and you want to keep the right to sue Align or continue with a pending lawsuit you already initiated against Align regarding claims for unpaid wages and overtime under New York law and/or New Jersey law, all claims under New York law and/or New Jersey law asserted in the lawsuit, or any claims under New York law and/or New Jersey law that arise from or are related to the facts alleged in the lawsuit and/or your employment with Align for acts that occurred between September 24, 2009 and July 15, 2016 (for New York claims) and September 24, 2013 and July 15, 2016 (for New Jersey claims), then you must take steps to get out.  This is called excluding yourself or opting out of the settlement class.

| **14.   How do I get out of the settlement?** |
| --- |

If you do <u>not</u> wish to be bound by the settlement and <u>do not wish to receive a settlement payment</u>, you must mail a letter postmarked no later than **[DATE]** that states, in substance: "I opt out of the Align Communications, Inc. wage and hour settlement" ("Opt-out Statement").  You must include your name, address, and telephone number in the letter, and sign and date it.  You should send the letter to:

ALIGN COMMUNICATIONS SETTLEMENT
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9940

If you ask to be excluded from the settlement, you will not get any payment for your portion of the state law claims under the settlement, and you cannot object to the settlement.  You will not be legally bound by anything that happens in this lawsuit.  You may be able to sue Align in the future.

To exclude yourself from the FLSA settlement, simply do not submit the Opt-in Form.

| **15.   If I don't exclude myself, can I sue Align later?** |
| --- |

Unless you exclude yourself, you give up any right to sue Align for claims for unpaid wages, overtime, and improper wage deductions, in addition to any claim that arises from or is related to the facts alleged in the lawsuit for the period of September 24, 2009 (if you worked in NY) and/or September 24, 2013 (if you worked in NJ) and July 15, 2016.  If you have a pending lawsuit against Align covering these matters, speak to your lawyer in that case immediately.  You must exclude yourself from this Class to continue your own lawsuit.  Remember, the exclusion deadline is **[DATE]**. To exclude yourself from the state law claims, you must affirmatively submit the exclusion letter (described above).  To exclude yourself from the FLSA claims, simply do **not** submit an Opt-in Form.

| 16.   If I exclude myself, can I get money from this settlement? |
| --- |

No.  You will not receive any money if you exclude yourself from this settlement.  If you do not exclude yourself (as explained in Paragraph 14 above), you will remain in the Class.  That means that you cannot sue, continue to sue, or be a party in any other lawsuit against the Defendant about the issues in the Lawsuit.  It also means that all the Court's orders will apply to you and legally bind you.

| OBJECTING TO THE SETTLEMENT |
| --- |

If you choose to stay in the class, you can tell the Court that you don't agree with the settlement or some part of it.  This is called objecting to the settlement.  The Court will consider your views.

| 17.   How do I tell the Court that I don't like the settlement? |
| --- |

To object, you must submit a letter to the Claims Administrator at the address below that says, in substance "I object to the settlement in the Align Communications, Inc. wage and hour case," as well as the reasons that you object to the settlement.  Please note that you can only object to the terms of the settlement if you choose to participate in the settlement by doing nothing (for state law claims) and submitting an Opt-in Form (for federal claims, if any) by the required date.  However, if the Court rejects your objection, you will still be bound by the terms of the settlement.  The letter must include your name, address, telephone number, and signature.  You may withdraw your objection at any time.

The Court will hold a hearing, called a fairness hearing, to decide whether to approve the settlement.  More information about this hearing can be found below, in Sections 19-21 of this notice.  If you wish to appear at the fairness hearing, you should also state in your letter objecting to the settlement: "I intend to appear at the Fairness Hearing."

Your letter must be postmarked no later than **[DATE]**.  You should send the letter to:

ALIGN COMMUNICATIONS SETTLEMENT
RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-9940

If you do not comply with the procedures and deadlines described in this notice for submitting written comments objecting to the settlement or appearing at the fairness hearing, you will <u>not</u> be entitled to be heard at the hearing, or to contest or appeal any approval of the settlement or any award of attorneys' fees or expenses, or to contest or appeal from any other orders or judgments of the Court entered in connection with the settlement.  The Parties may file with the Court written responses to any filed objections.

**18.   What's the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the settlement. You can only object if you participate in the settlement. You cannot object to the settlement and exclude yourself from the settlement.

Excluding yourself is telling the Court that you don't want to be part of the class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing on December 13th, 2017 to decide whether to approve the settlement. You may attend and you may ask to speak, but you do not have to. You may not speak at the hearing if you have excluded yourself from the class.

**19.   When and where will the Court decide whether to approve the settlement?**

The Court will hold a fairness hearing on December 13th, 2017 in Courtroom 1106 at the United States District Court for the Southern District of New York, 40 Foley Square, New York, NY 10007. The purpose of this hearing will be for the Court to determine whether the settlement is fair, adequate, reasonable and should be approved by the Court. The Court will consider any comments or objections that have been filed in accordance with the procedures described above.

**20.   Do I have to come to the hearing?**

No. Class Counsel will answer questions that the Judge may have. However, you are welcome to come at your own expense. If you sent an objection to the settlement, you don't have to come to Court to talk about it. If you mailed your written objection in time, the Court will consider it. You may also pay your own lawyer to attend, but that is not necessary.

**21.   May I speak at the hearing?**

If you would like to speak at the hearing, you should follow the process described at Section 17 of this notice. You cannot speak at the hearing if you excluded yourself from the class or did not submit an objection.

## IF YOU DO NOTHING

**22.   What happens if I do nothing at all?**

If you do nothing, you will only get money under the settlement representing your share of any state law claims; you will not get any money for claims you may have under the FLSA.

| **HOW CAN I GET MORE INFORMATION?** |
| --- |

This notice does not contain all the terms of the proposed settlement.  More details are in a Settlement Agreement.  You can get a copy of the Settlement Agreement by contacting Class Counsel.  If you have any other questions or desire additional details, you may also contact Class Counsel.  Class Counsel's contact information is:

> The Law Office of Christopher Q. Davis, PLLC
> 225 Broadway, Suite 1803
> New York, NY 10007
> 646-430-7930
> clerk@workingsolutionsnyc.com

# **OPT-IN FORM**

I consent to become a party plaintiff in the FLSA collective action entitled *Sheikh, et al. v. Align Communications, Inc.,* Case No. 1:15 Civ. 07549 (LGS).

1.  Please fill in the following information:

    _____
    Full Legal Name (Print)


    xxx-xx-_____
    Last Four Digits of Social Security Number


2.  Please select from one of the following options:

    ___ I wish to be represented by The Law Office of Christopher Q. Davis, PLLC.  I authorize such counsel to make all decisions with respect to the conduct and handling of this action, including the settlement thereof, as they deem appropriate or necessary, subject to the approval of the Court.

    ___ I wish to be represented by my own attorney, at my own expense. If you have selected this option, please state your attorney's name, address, and phone number.  Your attorney must file a notice of appearance promptly with the Clerk of the Court.
    _____
    _____

3.  I understand that these claims are brought under the Fair Labor Standards Act to recover unpaid overtime compensation.  As a current or former employee of Align Communications, Inc., I hereby consent, agree, and opt-in to become a party plaintiff herein, entitled to receive payment and otherwise be bound by any settlement of this action or adjudication of the Court.

4.  I hereby authorize the Claims Administrator to file this Consent with the Clerk of Court.

5.  SIGNATURE:

    _____          _____
    (Signature)                                                      (Date)

**Mail to:**

ALIGN COMMUNICATIONS SETTLEMENT
c/o RG/2 Claims Administration LLC
PO Box 59479
Philadelphia, PA 19102-947
Tel. 646-430-7930

1